IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| JOHN K. RAMEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:08-CV-083 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of defendant Commissioner's final decision denying plaintiff's claim for disability insurance and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social Security Act. For the reasons that follow, defendant's motion for summary judgment [doc. 14] will be granted, and plaintiff's motion for summary judgment [doc. 12] will be denied.

I.

*Introduction*

As is its practice, the court has thoroughly reviewed the administrative record in this appeal. The court must observe that it strains to recall having ever been presented with a Social Security claim that appeared more lacking in merit or veracity. Merely by way of example, the following nonexaustive evidentiary sampling is noted:

1. Plaintiff previously received disability insurance and/or SSI benefits from the Commissioner based on "nervous problems and retardation." [Tr. 313, 407]. Those benefits were discontinued because, by plaintiff's own admission, "They found out I was working" while simultaneously claiming to be disabled. [Tr. 313].

2. Plaintiff has told the Commissioner that he is unable to shop without wheelchair or motorized cart assistance [Tr. 146, 150], but a contemporary physical examination showed normal range of motion in all major joints, along with full muscle strength throughout his body. [Tr. 409].

3. Plaintiff reports to be limited in part by minimal education. He has been provided with training opportunities including Job Corps but dropped out because "he was uncomfortable with the large number of black trainees present at the program." [Tr. 451].

4. Although plaintiff purports to suffer constant lower back pain so disabling that he is left "crying, begging for mercy, the power of the Lord" [Tr. 145, 479], spinal imaging has produced essentially "mild," "minimal," insignificant, "very minimal," "slight," and "small" findings. [Tr. 170, 173, 176, 205, 351, 382, 434].

5. Plaintiff has told the Commissioner [Tr. 85, 117] and medical sources [Tr. 226, 259, 320] that he does not use street drugs. He was briefly hospitalized in 2002 due to threats made toward his girlfriend's children, and for purported suicidal gestures. [Tr. 242]. Plaintiff initially assured the admissions staff that he had *never* used drugs [Tr. 243], but toxicology reports were positive for marijuana [Tr. 236, 240] and he soon thereafter admitted that he uses marijuana "every day when [he] can afford" it. [Tr. 269]. Similarly, a May 2006 drug screen was positive for marijuana [Tr. 435-36] but plaintiff in April and June 2006 told the medical source who ordered the screen that he never uses drugs. [Tr. 422, 424]. Additionally, plaintiff was arrested for marijuana possession in March 2003 [Tr. 250] but denied drug use to the Commissioner in April 2003. [Tr. 85].

6. Considering the myriad misstatements pertaining to drug abuse, a factfinder could also reasonably question plaintiff's repeated claims to the Commissioner [Tr. 84, 116] and medical sources [Tr. 180-81, 185, 188, 192, 197, 209, 211, 213, 216, 223, 226, 243, 250, 256, 269, 292, 303, 313, 320, 348, 355, 385] that he no longer uses alcohol because "God took the urge away" [Tr. 313], particularly in light of a historical "fairly well developed mixed substance abuse problem" at least previously including a "fifth of alcohol daily," "up to 1 or 2 cases of beer per drinking episode," and the spending of "every available cent that he has . . . on alcohol or marijuana." [Tr. 385, 450].

7. In 2006, noncompliance with pain and tranquilizer prescriptions was noted ("taking too many of his medications"). [Tr. 437].

8. Plaintiff seeks disability benefits in part due to "mental retardation," yet he has a driver's license. [Tr. 117].

9. Although plaintiff was representing to the Commissioner in late 2003 that he is disabled (including allegations that he was barely able to stand or walk, rarely left his home, and sometimes needed a walker [Tr. 74, 83, 85]), his treatment file was closed in that same period by Holston Counseling Center because he was noted to be "never at home when visits are made." [Tr. 343].

10. Although the present applications allege a disability onset date of December 31, 2003 [Tr. 42, 55], plaintiff sought medical care in June 2004 for alleged pain secondary to a riding lawn mower rolling on him while he was loading it onto a truck. [Tr. 345, 347].

11. Plaintiff purports to suffer shortness of breath [Tr. 408], yet he smokes one to one and one-half packs of cigarettes per day [Tr. 313, 408], which he reports having done since age seven. [Tr. 408].

Faced with the instant administrative record, it is unsurprising that the Commissioner has deemed plaintiff's subjective complaints "not credible or supported by the documentary evidence" [Tr. 24], and plaintiff's style of life is inconsistent with that of a person who suffers from the limitations alleged. *See Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988). The court will not further waste its resources discussing

3

plaintiff's subjective claims. The remainder of this memorandum will instead address only the issues presented by plaintiff pertaining to the *objective* evidence of record within the framework of substantial evidence review.

II.

*Procedural History*

Plaintiff was born in 1963. His past relevant work is as a dishwasher and a janitor. [Tr. 95]. The present claims for benefits were filed in July 2004, with disability alleged on the basis of "slip disc in back and walk on side of both feet." [Tr. 42, 55, 94].[1] The present applications were denied initially and on reconsideration. Plaintiff then requested a hearing, which took place before an Administrative Law Judge ("ALJ") in September 2006.

In October 2006, the ALJ issued a decision denying benefits. He concluded that plaintiff suffers from "low back pain, dysthymic disorder, and borderline intellectual functioning," which are "severe" impairments but not equal to any impairment listed by the Commissioner. [Tr. 24]. The ALJ found plaintiff to have the residual functional capacity ("RFC") to perform "light exertion requiring no more than borderline intellect and with a dysthymic disorder with no significant mental restrictions in ability to perform work related activities . . . ." [Tr. 24]. Relying on vocational expert testimony, the ALJ determined that

---

[1] At least one other prior application was filed in March 2003 after the Commissioner's revocation of plaintiff's benefits. [Tr. 58-92]. The record indicates that some prior claim, presumably the one filed in March 2003, was denied on December 22, 2003, and not further appealed. [Tr. 112].

4

plaintiff remains able to return to his past relevant work as a janitor or, in the alternative, to perform a significant number of light and sedentary jobs existing in the regional and national economies. [Tr. 25].

Plaintiff then sought review by the Commissioner's Appeals Council. Review was denied on February 1, 2008, notwithstanding plaintiff's submission of additional medical records. [Tr. 6, 10].[2] The ALJ's ruling became the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481. Through his timely complaint, plaintiff has brought his case before this court for review. *See* 42 U.S.C. § 405(g).

III.

*Applicable Legal Standards*

Review of the Commissioner's decision is confined to whether the ALJ applied the correct legal standards and whether his factual findings were supported by substantial evidence. 42 U.S.C. § 405(g); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The "substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting

---

[2] Plaintiff's additional documents [Tr. 461-73] are not discussed in his brief and are thus not an issue on appeal. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006).

5

*Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488 (1951)). In reviewing administrative decisions, the court must take care not to "abdicate [its] conventional judicial function," despite the narrow scope of review. *Universal Camera*, 340 U.S. at 490.

A claimant is entitled to disability insurance payments if he (1) is insured for disability insurance benefits, (2) has not attained retirement age, (3) has filed an application for disability insurance benefits, and (4) is under a disability. 42 U.S.C. § 423(a)(1). "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423 (d)(2)(A).[3] Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

---

[3] A claimant is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. 42 U.S.C. § 1382. "Disability," for SSI purposes, is defined the same as under § 423. 42 U.S.C. § 1382c(a)(3).

6

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters*, 127 F.3d at 529 (citing 20 C.F.R. § 404.1520). Plaintiffs bear the burden of proof during the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *See id.*

IV.

*Analysis*

As discussed, the ALJ found plaintiff capable of performing at least "light exertion requiring no more than borderline intellect and with a dysthymic disorder with no significant mental restrictions in ability to perform work related activities . . . ." Plaintiff argues that the ALJ's decision was not supported by substantial evidence. Specifically, in addition to his subjective allegations, plaintiff contends that the ALJ improperly disregarded: (1) Mental RFC Assessments completed by nonexamining sources Gina Frieden and Dr. Kourany; (2) a 2003 psychological evaluation by Elizabeth Jones; (3) a 2005 physical evaluation by Dr. Samuel Breeding; (4) Global Assessment of Functioning ("GAF") scores assigned by various mental health sources; and (5) medical evidence significantly predating

7

the alleged disability onset date. Any issue not specifically raised by plaintiff has been waived. *See, e.g., Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490-91 (6th Cir. 2006).

## A. Mental

Regarding plaintiff's alleged mental limitations, the ALJ cited the March 2005 evaluation by clinical psychologist Steven Lawhon in support of the conclusion that plaintiff has "no significant mental restrictions in ability to perform work related activities." [Tr. 24]. At that evaluation, plaintiff "appeared to be relatively reliable" [Tr. 384] and, following interview and observation, Dr. Lawhon opined, "The claimant does not have any impairment related mental limitations." [Tr. 386]. The court has reviewed Dr. Lawhon's report and finds it credible in light of the administrative record as a whole.

Following Dr. Lawhon's evaluation, Dr. Kourany completed his Mental RFC Assessment, predicting no limitations of more than a moderate degree. [Tr. 388-89]. The conclusions of that nonexamining source were therefore not inconsistent with those of the ALJ that plaintiff has "no significant mental restrictions."

Senior psychological examiner Jones's evaluation was performed in September 2003. Plaintiff was "passively cooperative with the evaluation procedures" but "exhibited poor motivation and persistence to tasks, and the results [were] felt to under-represent his true level of functioning which likely fall[s] within the borderline range." [Tr. 312]. When asked about legal difficulties, plaintiff acknowledged a prior arrest for "driving drunk on a bicycle" but "hesitated stating, 'No,'" when asked about other legal problems [Tr. 313], even

8

Case 2:08-cv-00083-RLJ   Document 17   Filed 03/03/09   Page 8 of 13   PageID #: 78

though he was at that time on probation for marijuana possession and had recently completed another probationary period for domestic violence. [Tr. 247, 250, 408]. "When asked [by Ms. Jones] about marijuana use, he again was somewhat evasive and stated, 'No.'" [Tr. 313]. Plaintiff "put forth little effort" on testing [Tr. 316-17], and the only significant vocational limitation mentioned by Ms. Jones was that "he may have difficulty responding appropriately to criticism from supervisors due to characterological deficits" such as the assertion that "I raise Cain." [Tr. 315, 318].

Ms. Frieden then completed her Mental RFC Assessment in December 2003. That nonexamining source predicted several moderate restrictions in addition to marked limitations in the abilities to carry out detailed instructions and interact appropriately with the general public. [Tr. 328-29].

Assuming *arguendo* that the ALJ erred in some way by not sufficiently detailing his rejection of Ms. Jones's' and/or Ms. Frieden's conclusions, any such error is deemed harmless. An administrative decision should generally not be reversed and remanded where doing so would be merely "an idle and useless formality." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (citation omitted). At the same time, a reviewing court cannot deem an error harmless solely because the claimant "appears to have had little chance of success on the merits anyway." *Id.* at 546 (citation omitted). Instead, the court must be able to discern at least *some* indirect support for the challenged rejection of a pertinent opinion, such as that the opinion was so patently deficient that a reasonable fact-

9

finder would not have credited it. *Id.* at 547.

It is evident that plaintiff presented to Ms. Jones with misinformation and minimal effort. It is also evident that Ms. Frieden's conclusions were impacted by plaintiff's extraordinarily dubious subjective complaints. [Tr. 331, 343]. The unreliable bases for Ms. Jones's and Ms. Frieden's conclusions render those sources' assessments "so patently deficient that the Commissioner could not possibly credit" them. *Id.* Any error pertaining to those two sources would therefore be harmless.

Next, plaintiff cites evidence which significantly predates both his alleged onset date (December 31, 2003) and the res judicata date (December 22, 2003) [Tr. 112] resulting from his prior claims. The ALJ did not err in disregarding evidence - mental or physical - which significantly predates the alleged onset of disability. *See, e.g., Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 687 (6th Cir. 1992). Lastly, to the extent that plaintiff seeks to rely on various mid-range to low GAF scores found in the record, those scores have no bearing on the court's analysis in light of plaintiff's grossly unreliable self-reporting.[4]

---

[4]

> The [GAF] score is a *subjective* determination that represents the clinician's judgment of the individual's overall level of functioning. . . . [A] score may have little or no bearing on the subject's social and occupational functioning. . . . [W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a [GAF] score in the first place.
>
> Moreover, the Commissioner has declined to endorse the [GAF] score for use in the Social Security and [SSI] disability programs, and has indicated that [GAF] scores
> (continued...)

10

B. Physical

The ALJ found plaintiff's pain complaints to be inconsistent with the administrative record as a whole. [Tr. 24]. The ALJ restricted plaintiff to light and sedentary work [Tr. 24-26], even though the May 2005 Physical RFC Assessment by Dr. Reeta Misra placed plaintiff at the higher level of medium exertion. [Tr. 412-16].

Plaintiff argues that the ALJ did not sufficiently account for the views of consulting examiner Samuel Breeding. Dr. Breeding first examined plaintiff in June 2003 due to claims of disabling foot and back pain. Gait was essentially normal, although plaintiff's shoes showed wear on the sides indicating that "he does walk on the lateral side of his feet and rolls toward the inside at the ball of the foot." [Tr. 296]. Plaintiff was described as moving very comfortably throughout his spinal exam. [Tr. 296].

Plaintiff returned to Dr. Breeding for a second evaluation in May 2005. Dr. Breeding described him as appearing "in no acute distress." [Tr. 408-09]. Gait was again normal, although plaintiff did "seem to walk more on the outer aspect of his feet." [Tr. 409].

---

[4](...continued)
have no direct correlation to the severity requirements of the mental disorders listings.

. . .

. . . Any failure to reference [GAF] scores or to compare different scores attributed to the same subject, without more, does not require reversal.

*DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 415-16 (6th Cir. 2006) (citations and quotations omitted) (emphasis added).

11

Case 2:08-cv-00083-RLJ  Document 17  Filed 03/03/09  Page 11 of 13  PageID #: 81

Plaintiff exhibited normal range of motion in all major joints including the lumbar spine, and muscle strength appeared full throughout. [Tr. 409]. Dr. Breeding reviewed a lumbar CT scan indicating mild bulging at L5-S1 [Tr. 407] and referred to those results as "relatively normal." [Tr. 410]. Nonetheless, and despite the dearth of "any records pertaining to his foot problem," Dr. Breeding opined that plaintiff "can lift at least 35 pounds occasionally. He can sit for six to eight hours in an eight-hour day. He can stand for at least four hours in an eight-hour day." [Tr. 409-10]. This opinion was based on plaintiff's report of chronic low back and foot pain. [Tr. 409].

Although the ALJ did not explain in depth his rejection of Dr. Breeding's lifting and standing restrictions, any resulting error would again be deemed harmless. At the administrative hearing, the ALJ obtained vocational expert testimony that a significant number of sedentary jobs exist in the regional and national economies to accommodate Dr. Breeding's limitations. [Tr. 25, 487]. Further, since Dr. Breeding's opinion was clearly based on plaintiff's self-reports (despite a "relatively normal" back scan and no evidence of treatment for the alleged foot problem [Tr. 153]), it is unlikely that any reasonable adjudicator would have credited Dr. Breeding's opinion. *See Wilson*, 378 F.3d at 547.

It should be made clear that the ALJ did not conclude that plaintiff does not suffer some discomfort. Plaintiff's physical complaints were taken into account by the ALJ in restricting the RFC to a range of light and sedentary exertion. It is the *severity* of plaintiff's condition that is at issue, and substantial evidence supports the ALJ's conclusion

that the present complaints are overstated.

There is evidence that plaintiff suffers from conditions that could reasonably be expected to cause some discomfort. *See generally Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847 (6th Cir. 1986). However, viewing the present administrative record as a whole, a reasonable fact-finder could conclude that plaintiff's documented conditions are not "of such a severity that [they could] reasonably be expected to produce the alleged disabling pain." *See id.* at 853.

V.

*Conclusion*

The Commissioner's final decision survives substantial evidence review and will not be reversed by this court. An order consistent with this opinion will be entered.

Lastly, the court notes that plaintiff appears to have at least one additional benefits claim currently pending before the Commissioner. [Tr. 7]. In light of the administrative record that has been presented to the court in the present case, it is hoped that the Commissioner will scrutinize the pending claim, and any future claim filed on behalf of this plaintiff, with great care.

ENTER:

s/ Leon Jordan
United States District Judge